Submitted on record and briefs November 20, 1998, reversed and remanded for reconsideration February 10, 1999

Mark Francis McCOLLY,
*Petitioner,*

*v.*

DRIVER AND MOTOR VEHICLE
SERVICES BRANCH (DMV),
*Respondent.*

(65022; CA A101330)

974 P2d 696

Mark Francis McColly filed the brief *pro se.*

Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and David J. Amesbury, Assistant Attorney General, filed the brief for respondent.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Petitioner seeks review of a decision by Driver and Motor Vehicle Services (DMV) to suspend his driving privileges for one year. We conclude that DMV relied on unsupported findings to conclude that petitioner did not have a reasonable belief that he had liability insurance when he was involved in a motor vehicle accident. Accordingly, we reverse and remand.

The following facts are undisputed. Petitioner was involved in an automobile accident on February 1, 1997. At the time of the accident, petitioner was driving a 1979 Toyota pickup for which he had no insurance. Earlier that day, petitioner had driven into the woods near his home in a 1977 Jeep, which was fully insured.[1] He was accompanied by his five-year-old child and by a friend. While in the woods, petitioner was unable to start the Jeep. He hiked back to his home, leaving his friend and child with the Jeep, in order to get another vehicle with which to jump-start the Jeep. After discussing the matter with his wife, petitioner decided to use the Toyota for that purpose. Both petitioner and his wife believed that, even though the Toyota was uninsured, petitioner would be covered by liability insurance while driving the Toyota, because he would be driving it as a replacement vehicle for the Jeep. On the way back from retrieving the Jeep, petitioner was involved in an accident. As a result of the accident, petitioner was notified by DMV that, because he was not covered by liability insurance while driving the Toyota and, hence, was driving uninsured at the time of the accident, his driving privileges would be suspended. Petitioner requested a hearing, which was held on December 18, 1997.

At the hearing, petitioner offered as a defense to the suspension that he had a reasonable good-faith belief that he was insured while driving the Toyota in what he considered to be an emergency situation. Under ORS 809.450(3)(e), the DMV may rescind a proposed suspension for a financial

---

[1] Before April 4, 1996, the Toyota pickup had been fully insured. On that date, petitioner transferred the insurance coverage from the Toyota to the Jeep. On the date of the accident, petitioner owned two insured vehicles—the 1977 Jeep and a Buick Skylark—and one uninsured vehicle, the 1979 Toyota.

responsibility violation if, at the time of the accident, the driver "reasonably and in good faith believed that [he or she] was in compliance with financial responsibility requirements and [he or she] is currently in compliance with financial responsibility requirements."

Petitioner testified that his belief was based on his wife's previous experience in borrowing a car when her car had broken down:

"[My wife] had experienced her car breaking down. And had used another vehicle that was at my house at the time. And she had called her insurance company, and they okayed it that she could use it, since her vehicle was broke[n] down."

Petitioner later testified that, when he called his insurance company after the accident, he was told that such "emergency" coverage extended only to a car that was not in his name.

After the hearing, the administrative law judge (ALJ) issued an order in which he made the following findings:

"1. On February 1, 1997, Petitioner operated a motor vehicle on premises open to the public: Wildcat Road in Tillamook County, Oregon, and was involved in a motor vehicle accident. Wildcat Road is freely accessible by the public, without closed gates or signs indicating 'private property.'

"2. The vehicle Petitioner was operating at the time of the accident was a 1979 Toyota pickup, owned by Petitioner.

"3. At the time of the accident, there was no motor vehicle liability insurance covering Petitioner's operation of the vehicle nor was there a $60,000 motor vehicle liability bond, $60,000 cash deposit with the Department or certificate of self-insurance issued by the Department.

"4. Petitioner had last had liability insurance on the 1979 pickup with State Farm, on liability policy number 288-8203-F28-37 A, effective through April 4, 1996. *See* Exhibit C. At that point, Petitioner transferred his liability insurance coverage to the 1977 Jeep.

"5. On the day of the accident, Petitioner, his son and family friends had been up in the woods, off of Wildcat

Road, and Petitioner's 1977 Jeep, which was covered by liability insurance, broke down.

"6. Petitioner hiked back to his residence and drove the 1979 Toyota pickup, on which liability insurance had been dropped, into the woods to get the others. This is when the accident occurred.

"7. Prior to the accident, when he retrieved the pickup at the residence, Petitioner was told by his wife that there would be liability insurance coverage for his operation of the pickup.

"8. Petitioner's wife was incorrect in this belief, because she was analogizing Petitioner's situation to another. *That situation occurred when a family member was driving the motor vehicle of another family member, and an accident occurred. There had been liability insurance coverage for the involved motor vehicle in that case, because the policy covered those who operated the insured motor vehicle with the owner's permission.*"

(Emphasis added.)

Based on those findings, the ALJ concluded that petitioner had established that he had a good-faith belief that he was insured but had failed to establish that that belief was reasonable, stating:

"It is true that Petitioner was misled by his wife's mistaken belief that another situation was similar to his. However, in *that* case, there actually was an insurance policy, and a premium paid to cover the operation of a specific involved vehicle."

(Emphasis in original.)

 Petitioner seeks review of the ALJ's decision, arguing that the ALJ made a number of factual errors. We review such a challenge for substantial evidence. ORS 183.482(8)(c). Substantial evidence to support a finding exists "when the record, viewed as a whole, would permit a reasonable person to make that finding." *Id.* Petitioner's first two assignments of error challenge the ALJ's finding that the liability insurance on the 1979 Toyota had been transferred to the 1977 Jeep. Petitioner argues that that finding is erroneous because the transferred insurance was comprehensive and

not merely liability. We conclude that the ALJ's finding, although possibly incomplete, is not incorrect. The issue at the hearing was whether petitioner had the statutorily required liability insurance. Insurance coverage other than liability coverage was not relevant to the proceeding, and it was not error for the ALJ to fail to mention the other coverage.

■ Petitioner's third assignment of error challenges the ALJ's finding that petitioner's situation was not analogous to the one that involved his wife, because the latter

"situation occurred when a family member was driving the motor vehicle of another family member, and an accident occurred. There had been liability insurance coverage for the involved motor vehicle in that case, because the policy covered those who operated the insured motor vehicle with the owner's permission."

We agree with petitioner that there is no evidence to support those findings. Petitioner's uncontradicted testimony was that his wife had once borrowed his sister's car because her own car had broken down and that her insurance company had "okayed her to use it." The only inference that can be drawn from that testimony was that he and his wife believed that their insurance would cover a replacement vehicle in an emergency situation, as it had before. The ALJ did not address the reasonableness of that belief because he mistakenly focused on facts that were not supported by the record. There was no evidence that the sister's car had been covered by the sister's insurance policy or that a premium had been paid for the coverage of that vehicle.[2] Further confusion is caused by the ALJ's finding that petitioner's wife had been in an accident while driving the replacement vehicle. There is no evidence in the record to support that statement.[3] Because

---

[2] The ALJ apparently found that the insurance company that had been contacted about the coverage was the *sister's* insurance company, and that coverage had been provided under *that* company's policy for a vehicle driven with its owner's permission. The evidence in the record does not support those findings.

[3] DMV concedes that there is no evidence in the record to support the finding that petitioner's wife had been in an accident while driving the replacement vehicle. DMV does not comment on the lack of evidentiary support for the finding that the replacement car was covered by another insurance policy for a which a premium had been paid.

DMV relied on unsupported findings to deny reinstatement of petitioner's license, we reverse and remand its decision for reconsideration.

Reversed and remanded for reconsideration.